464 P.2d 822

**Jeanne BACHRACH, Appellant,**

v.

**J. Robert STARK, Appellee.**

**I CA–CIV 994.**

Court of Appeals of Arizona,
Division 1.

Feb. 9, 1970.

Rehearing Denied April 20, 1970.

Review Denied May 19, 1970.

Murray Miller, Phoenix, for appellant.

Stark & Wood, by Rod Wood, Phoenix, for appellee.

HOWARD, Chief Judge.

The trial court entered a judgment in favor of the appellee for professional serv-

ices rendered to appellant, and she appeals therefrom.

Two basic issues are involved, namely, (1) whether an attorney-client relationship existed between appellee and appellant and (2) whether appellee, regardless of the existence of an attorney-client relationship, performed or provided professional services to appellant for which he would be entitled to charge a fee.

The first issue is quickly resolved as the parties are agreed that at no time did appellant engage the appellee as her attorney.

The appellant had been married to one Alexander Bachrach for over twenty years. On October 26, 1965 a property settlement agreement was entered into between them. The parties continued to reside together thereafter. On June 9, 1966 Mr. Bachrach conferred with appellee concerning various legal matters. On June 20, 1966 Mr. Bachrach left Mrs. Bachrach, the appellant, and never returned. On September 18, 1966 Mr. Bachrach died.

The appellee contends that he brought this action against appellant to recover the reasonable value of the legal services he rendered to appellant-Mrs. Bachrach at the request of her deceased husband for her benefit.

When the appellant-wife and Mr. Bachrach divided their property in accordance with the property settlement agreement, its status was changed from community to separate property. See Lightning Delivery Co. v. Matteson, 45 Ariz. 92, 39 P.2d 938 (1935); Schofield v. Gold, 26 Ariz. 296, 225 P. 71, 37 A.L.R. 275 (1924).

There were insurance policies on the life of the husband, wherein the wife was named beneficiary. These policies were referred to in the separation agreement in the following manner:

"* * * Husband and Wife shall own the policies and Husband shall keep them in full force and effect and make all payments thereon. It is futher agreed that in the event the Wife remarries or predeceases Husband that the policies shall be owned by the Husband and he will thereafter have the right to change the named beneficiaries thereon."

The Whereas Clause of the separation agreement says:

"* * * it is the desire of and deemed by each of the parties hereto to be to their own separate interest that a *full, final and absolute settlement of all of their respective rights* and claims of every kind and nature which either have or may have against the other be made, *including* but not limited to *a settlement of all of their community property rights.* * * *" (Emphasis added.)

Taking the language referring to the insurance policies together with the foregoing Whereas Clause, we conclude that the husband and wife intended to completely dispose of their community property and that they did so dispose of all of their community property. They became in effect co-owners of the insurance policies while they both lived and the wife did not remarry. Upon the death of the husband, or upon the remarriage or death of the wife, the policies were to become the separate property of the other.

Therefore, there was no community property in the husband's possession, after the execution of the separation agreement.

The debts incurred by the husband were not incurred for the benefit of the community since there was no community property. They were personal debts and the husband's creditors must look to his separate property.

Appellee claims that he is entitled to attorney's fees even in the absence of an attorney-client relationship on a quantum meruit basis. He cites and discusses Bogorad v. Schwarz, 208 F.2d 704 (4th Cir. 1953) for this proposition. In the *Bogorad* case the wife, although she did not employ the attorney, not only benefited from plaintiff's services, but knowingly took affirmative action accepting such benefit. There the court also said that:

"* * * it appears that plaintiff [attorney] was employed to represent the

interest of Mrs. Schwarz in the litigation as well as that of her husband * * *"

and that:

"* * * [she] knew that the appeal was being prosecuted to save her property from the tax lien and joined in procuring the cost bond on appeal * *."

The Court concluded that:

"* * · * Even if she did not originally authorize the employment of plaintiff to represent her in the litigation, such action must be deemed a ratification of his employment."

There the wife knew that the attorney was instituting suit and an appeal to protect both her husband's and her interest in real property, she helped with regard to the litigation, and her actions ratified the attorney's employment by her.

In the case before us the appellee-attorney represented the husband's interests against the appellant-wife. In summary, the evidence discloses that the appellee-attorney advised the husband with regard to the property settlement agreement, advised on the subject of divorce, forwarded support payments to the wife, communicated with wife's attorney, refused to tell the wife where her husband was, and had telephone and office conferences with the husband's female traveling companion. We do not think that it is appropriate to characterize these services as having been performed for the benefit of the appellant. It is clear that appellee did not represent the interests of the appellant-wife and it is equally clear that the appellant never authorized the appellee by word or act to represent her.

The appellee's reliance upon Geier v. Laughlin, 129 A.2d 401 (D.C.Mun.1957). is misplaced. That case is similar to the Bogorad case and distinguishable in the same manner. It involved litigation and the resultant benefits obtained by one who thereafter refused to pay attorney's fees.

In addition, appellee claims that an automobile and bank account owned by appellant were "preserved and protected" by him by taking them and turning them over to the funeral director and, therefore, he is entitled to a fee. Surely the ethical code of the legal profession requires that when an attorney comes into possession of documents belonging to another, he immediately arrange to deliver them to their owner. No fee can attach to this service. This is true with regard to the life insurance policies. Nor can an attorney, under these facts and in good conscience, claim, as did the appellee, a fee based on the face value of the life insurance policies. that he "delivered." A serious question of ethics arises when an attorney demands a fee for delivering documents to their rightful owner.

Careful examination of the testimony leads us to the conclusion that the appellee performed no services for the appellant that would create an obligation against her separate property. The appellee-attorney must look to the estate of his client for payment of his fees.

Judgment reversed.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.